## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

*In re Geisinger Health Data Security Incident Litigation*

No. 4:24-CV-01071

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 30, 2025

In this data breach class action, two groups of attorneys have filed dueling motions to be appointed interim class counsel (through their respective named plaintiffs). Although there is little daylight between the applications, under the applicable standards, the Wierbowski Plaintiffs' proposed interim class counsel are best able to fairly and adequately represent the interests of the putative class. Accordingly, the Wierbowski Plaintiffs' motion to appoint interim class counsel is granted, and the Schulte Plaintiffs' motion for the same is denied.

## I.    BACKGROUND

On June 28, 2024, Plaintiff James Wierbowski filed a six-count class action complaint against Defendants Geisinger Health and Nuance Communications.[1] At some point in the past, Wierbowski visited a Geisinger location to receive healthcare services and, in the process, provided his personally identifiable and personal health information ("PII" and "PHI") to Geisinger.[2] Geisinger contracts with Nuance for

---

[1]    Doc. 1 (Wierbowski Compl.).
[2]    *Id.* ¶¶ 8-9.

healthcare technology services and shares its patients' PII and PHI as part of those services.[3] Geisinger and Nuance both promise to take measures to maintain the privacy of PII and PHI entrusted to them.[4]

On or about November 29, 2023, Geisinger became aware that a former Nuance employee was accessing Geisinger patient information after he had been terminated (the "Data Breach" or "Breach").[5] He was able to do so because Nuance did not immediately revoke his access to its network after terminating him.[6] According to Geisinger's notice, the Data Breach may have affected "more than one million Geisinger patients."[7] Wierbowski accordingly brought suit to recover on behalf of a putative class of similarly situated Geisinger patients.[8]

Several other putative class actions arising out of the Data Breach were also filed, and on July 31, 2024, the Court consolidated all pending and future related cases into Wierbowski's suit and restyled it "*In re Geisinger Health Data Security Incident Litigation.*"[9] The Court also set a deadline for any Plaintiffs to file a motion for appointment of interim lead counsel.[10] Two groups of Plaintiffs filed motions.

---

[3]   *Id.* ¶¶ 21-23.
[4]   *Id.* ¶¶ 24-27, 28-38.
[5]   *Id.* ¶ 40.
[6]   *Id.* ¶ 41.
[7]   *Id.* ¶ 43.
[8]   *Id.* ¶¶ 5-6.
[9]   *See* Doc. 18 (Order Consolidating Cases) ¶¶ 1, 4.
[10]  *Id.* ¶ 5.

One group of Plaintiffs, consisting of Wierbowski, John and Carolynn Saxer, Amber Lopez, Amanda Bidgood, and Ralph Reviello (the "Wierbowski Plaintiffs"), moved to appoint Benjamin F. Johns, Esq. and Ben Barnow, Esq. as interim co-lead class counsel and Scott Edward Cole, Esq., Andrew W. Ferich, Esq., Todd S. Garber, Esq., and Kenneth Grunfeld, Esq. as the plaintiffs' executive committee.[11]

The other Plaintiffs' group, consisting of Robert Schulte Jr., Barbara Gray, Michelle Davis, Ruth Albright, Jasmine Alicea, Brenda Everett, Mark Dushok, Christina Izquierdo, and Eric O'Brien (the "Schulte Plaintiffs") moved to appoint John Yanchunis, Esq. and Jamisen A. Etzel, Esq. as interim co-lead class counsel, Courtney E. Maccarone, Esq., Charles E. Schaffer, Esq., A.J. de Bartolomeo, Esq., Marc Edelson, Esq., Richard Golomb, Esq., and Patrick Egan, Esq. as the plaintiffs' executive committee, and Clifford A. Rieders, Esq. as local liaison counsel.[12]

The motions are now ripe for disposition; for the reasons that follow, the Wierbowski Plaintiffs' motion is granted and the Schulte Plaintiffs' motion is denied.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(g)(3) grants the Court discretion to "designate interim counsel to act on behalf of a putative class before determining

---

[11]  Doc. 35 (Wierbowski Plaintiffs' Mot.).
[12]  Doc. 36 (Schulte Plaintiffs' Mot.).

whether to certify the action as a class action."[13] In considering attorneys' fitness to serve as interim class counsel, the Court considers the factors set forth in Rule 23(g)(1), which governs appointment of class counsel.[14]

Pursuant to Rule 23(g)(1)(A), the Court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.[15]

The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[16] When multiple adequate applicants seek appointment, "the Court must appoint the applicant best able to represent the interests of the class."[17]

---

[13]   Fed. R. Civ. P. 23(g)(3).

[14]   *In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 365 (E.D. Pa. 2022); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175-76 (D.N.J. 2008).

[15]   Fed. R. Civ. P. 23(g)(1)(A).

[16]   Fed. R. Civ. P. 23(g)(1)(B).

[17]   Fed. R. Civ. P. 23(g)(2).

## III.    DISCUSSION

### A.    Work Counsel Has Done

Both attorney groups have done comparable work on this litigation to date. They have investigated details of the breach,[18] analyzed possible legal theories and potential causes of action,[19] communicated with named and putative class members,[20] and prepared class action complaints.[21] Both groups have also retained expert witnesses in anticipation of the merits phase of this litigation.[22]

To the extent any distinction is discernable, the Wierbowski attorneys may be able to claim an edge on this factor. Messrs. Johns and Barnow represented Wierbowski when he filed the first of the complaints to recover for the Breach. The Wierbowki Plaintiffs also claim that their attorneys filed a "Right-to-Know" request with the Pennsylvania Office of Attorney General and note that Johns and Barnow were responsible for coordinating with various plaintiffs' counsel to prepare and file the motion to consolidate related actions and set a briefing schedule for the motions to appoint interim class counsel.[23] Nevertheless, the Court assigns minimal weight to these considerations, as being first to file by a mere four days is far from a

---

[18]    Doc. 35 at 3; Doc. 36 at 5 ¶ (b).
[19]    Doc. 35 at 3; Doc. 36 at 5 ¶ (a).
[20]    Doc. 35 at 3; Doc. 36 at 5 ¶ (d).
[21]    Doc. 35 at 3; Doc. 36 at 5 ¶ (e).
[22]    Doc. 35 at 3; Doc. 36 at 5 ¶ (c); *see In re Vanguard*, 625 F. Supp. 3d at 366 (noting potential relevance of retaining expert witness).
[23]    Doc. 35 at 3-4; Doc. 14 (Mot. to Consolidate and Set Briefing Schedule).

"substantial" advantage,[24] the value of a "Right-to-Know" request in a case against private defendants involving only private conduct is questionable,[25] and the extent of the "coordination" led by Johns and Barnow appears to be obtaining plaintiffs' consent to the motion to consolidate.[26]

Accordingly, the Court does not award the first Rule 23(g)(1)(A) factor to either movant.

## B.    Counsel's Experience

In general, differences in counsel's experience tend to be the most important consideration in appointing interim class counsel.[27] Accordingly, the Court will closely scrutinize this factor. Both Plaintiffs groups' proposed counsel have extensive experience in handling both complex litigation generally and data breach actions specifically.

### 1.    Wierbowski Plaintiffs

#### a.    Benjamin F. Johns, Esq.

Mr. Johns claims two decades of practice experience including a number of plaintiffs'-side leadership roles in complex cases. For example, he served as lead or

---

[24]  *In re Vanguard*, 625 F. Supp. 3d at 369 (rejecting first to file as a useful consideration and noting that 49 days between filings was "not a substantial difference"); *but see In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (reasoning that, along with other evidence, first to file consideration was relevant to "work done" factor when subsequent complaints were "substantially similar" to first-filed complaint).

[25]  The Court has not located a similar case in which a public records request was relevant.

[26]  Doc. 14 (signed only by Johns and Barnow); *see* Doc. 14-1 (Certificate of Concurrence).

[27]  *See Outten v. Wilmington Tr. Corp.*, 281 F.R.D. 193, 200-01 (D. Del. 2012).

co-lead counsel in *In re Macbook Keyboard Litigation* and *Udeen v. Subaru of America, Inc.*, both of which resulted in settlements which were praised by their respective judges.[28] Mr. Johns has also been appointed to leadership roles in many data breach class actions, including medical data breaches like *Nelson v. Connexin Software Inc. d/b/a Office Practicum*,[29] *Breneman v. Keystone Health*,[30] and *In re Onix Group, LLC Data Breach Litigation*.[31] Much of Mr. Johns' litigation, including the three just-listed cases, has occurred in Pennsylvania.[32]

### b.    Ben Barnow, Esq.

Mr. Barnow has practiced law for more than fifty years.[33] Over the course of his career, he has steered more than fifty major complex cases resulting in class-wide recoveries.[34] Some of his most prominent victories include *Warner v. Toyota*

---

[28]  Doc. 35-1 (Johns Decl.) ¶ 12 (citing *In re Macbook Keyboard Litig.*, No. 5:18-CV-2813 (N.D. Cal.) and *Udeen v. Subaru of Am., Inc.*, No. 18-CV-17334 (D.N.J.)); *see also* Doc. 35-1 at 15-17 (citing *In re Nexus 6P Product Liab. Litig.*, No. 5:17-CV-2185 (N.D. Cal.); *In re MyFord Touch Consumer Litig.*, No. 13-CV-3072 (N.D. Cal.); *Weeks v. Google LLC*, 5:18-CV-0801 (N.D. Cal.); and others).

[29]  Doc. 35-1 at 15 (citing No. 22-CV-4676 (E.D. Pa.) (data breach against medical records vendor resulting in $4 million common-fund settlement)).

[30]  Doc. 35-1 at 15 (citing No. 2023-618 (Pa. Ct. C.P.) (data breach against medical company resulting in $900,000 common-fund settlement)).

[31]  Doc. 35-1 at 14 (citing No. 23-CV-2288 (E.D. Pa.) (data breach against medical records vendor resulting in recently approved settlement)).

[32]  *See* Doc. 35-1 at 14-15 (citing *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. 2:23-CV-1236 (E.D. Pa.); *Gravely, Sr. v. Fresenius Vascular Care, Inc.*, No. 2:24-CV-1148 (E.D. Pa.); *Bianucci v. Rite Aid Corp.*, No. 24-CV-3356 (E.D. Pa.); *Hughes v. UGI Storage Co.*, 263 A.3d 1144 (Pa. 2021) (argued by Mr. Johns)); Doc. 35 at 6-7 (citing *In re Wawa, Inc. Data Sec. Litig.*, No. 2:19-CV-6019 (E.D. Pa.); *In re Rutter's Inc. Data Sec. Breach Litig.*, No. 1:20-CV-382 (M.D. Pa.); *In re Keystone Data Breach Litig.*, No. 1:22-CV-1643 (M.D. Pa.))

[33]  Doc. 35-2 (Barnow Decl.) at 10.

[34]  Doc. 35-2 ¶ 4.

*Motor Sales, U.S.A., Inc.*, which culminated in settlement benefits estimated at $3.4 billion, and *Gann v. Nissan North America, Inc.*, with a settlement valued at over $444 million.[35] He has also been lead or co-lead counsel in myriad data breach class actions, including *Kostka v. Dickey's Barbeque Restaurants, Inc.*,[36] and *In re Countrywide Financial Corp. Customer Data Security Breach Litigation*.[37]

Moreover, Mr. Barnow has played a significant role in establishing data breach jurisprudence. In *In re TJX Companies Retail Security Breach Litigation*, he helped to negotiate a widely discussed settlement, described by Judge William G. Young of the United States District Court for the District of Massachusetts as containing "innovative" and "groundbreaking" elements.[38] He also achieved appellate reversals of the dismissal of plaintiffs' data breach claims on Article III standing grounds as lead counsel in *In re Horizon Healthcare Services Inc. Data Breach Litigation* and *Galaria v. Nationwide Mutual Insurance Co.*, and contributed to a similar reversal in *In re Zappos.com, Inc.*[39]

---

[35]  Doc. 35 at 8 (citing *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. 15-CV-2171 (C.D. Cal.) and *Gann v. Nissan N. Am., Inc.*, No. 3:18-CV-0966 (M.D. Tenn.)).

[36]  Doc. 35-2 ¶ 6 (citing No. 3:20-CV-3424 (N.D. Tex.) (data breach resulting in $2,350,000 settlement fund)).

[37]  Doc. 35-2 ¶ 6 (citing No. 08-MD-1998 (W.D. Ky.) (data breach MDL resulting in benefits for 17 million settlement class members)); *see* Doc. 35-2 at 11-5 (collecting 22 data breach cases).

[38]  Doc. 35 at 9 (citing No. 07-CV-10162 (D. Mass.)).

[39]  Doc. 35 at 9 (citing *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384 (6th Cir. 2016); *In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018)).

### c.    Proposed Executive Committee

The Wierbowski Plaintiffs' proposed executive committee members also have extensive experience with complex and data breach litigation. Scott Edward Cole has served as lead or co-lead counsel in a number of federal data breach cases.[40] Andrew W. Ferich was recently appointed co-lead counsel in a data breach class action pending in the United States District Court for the Eastern District of Pennsylvania and has served as class counsel in several other data privacy class actions.[41] Todd S. Garber has acted as lead or co-lead counsel in many data breach class actions over a twenty-year career.[42] And Kenneth Grunfield acts as part of plaintiffs' leadership in a number of pending data breach cases.[43]

In addition to their individual experience, the Wierbowski Plaintiffs' proposed counsel note that they also have extensive experience working with each other, and Johns and Barnow in particular note that they were co-lead counsel in *Perdue v. Hy-Vee Inc.* and *Kostka v. Dickey's Barbeque Restaurant, Inc.*[44]

---

[40] Doc. 35 at 12 (collecting cases).

[41] Doc. 35 at 13 (citing *Reichbart v. Fin. Bus. & Consumer Sol., Inc.*, No. 2:24-CV-1876 (E.D. Pa.) and collecting cases).

[42] Doc. 35 at 13-14 (collecting cases).

[43] Doc. 35 at 14-15 (collecting cases).

[44] Doc. 35 at 5 (citing *Perdue v. Hy-Vee Inc.*, No. 1:19-CV-1330 (C.D. Ill.) and *Kostka v. Dickey's Barbeque Rest., Inc.*, No. 3:20-CV-3424 (N.D. Tex.)); *see City of Providence v. AbbVie Inc.*, 2020 WL 6049139, at *6 (S.D.N.Y. Oct. 13, 2020) (noting importance of counsel's experience litigating cases together).

### 2. Schulte Plaintiffs

### a. John Yanchunis, Esq.

Mr. Yanchunis has practiced law for thirty-six years and leads the class action department at a relatively large plaintiffs'-side firm (Morgan & Morgan).[45] Throughout his career he been appointed lead counsel in a surplus of high-profile complex litigation, including data breach MDLs like *In re Capital One Consumer Data Security Breach Litigation*, which resulted in a $190,000,000 approved settlement for a class of 98 million customers that was complimented by Judge Anthony Trenga of the United States District Court for the Eastern District of Virginia as "an 'outstanding result'" attributable to the work of counsel, *In re Yahoo! Inc. Customer Data Security Breach Litigation*, which culminated in a $117,500,000 settlement fund for a class of approximately 194,270,000 plaintiffs, and *In re The Home Depot, Inc., Customer Data Security Breach Litigation*, which settled for $29,025,000 for 40 million consumers.[46] Mr. Yanchunis also served as lead or co-lead counsel in data breach class actions such as *Schmidt, et al. v. Facebook, Inc.*, *Walters v. Kimpton Hotel & Restaurant*, and *In re Arby's Restaurant Group Inc.*

---

[45] Doc. 36 at 7.

[46] Doc. 36-2 (Yanchunis Resume) at 3-4 (citing *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-MD-2915 (E.D. Va.); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. No. 5:16-MD-2752 (N.D. Cal.); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga.)).

*Data Security Litigation*, all of which resulted in beneficial settlements.[47] Like Mr. Barnow, Mr. Yanchunis's appellate work on data breach cases has set precedent in the area of Article III standing in *Bohnak v. Marsh & McLennan Cos.* and pleadings standards in *Ramirez v. Paradies Shops, LLC*.[48]

### b.    Jamisen A. Etzel, Esq.

Mr. Etzel has over a decade of legal experience handling complex litigation.[49] He was appointed co-lead counsel in *In re Generali COVID-19 Travel Insurance Litigation* and was an executive committee member in *In re Flagstar December 2021 Data Security Incident Litigation* and *In re Robinhood Outage Litigation*.[50] He has also contributed to data security litigation including *Opris v. Sincera Reproductive Medicine*, *First Choice Federal Credit Union v. The Wendy's Company*, and *Storm v. Paytime, Inc.*[51] Furthermore, Mr. Etzel "spearheaded the appellate briefing" in *Dittman v. UPMC*, a Pennsylvania Supreme Court case

---

[47] Doc. 36-2 at 5 (citing *Schmidt, et al. v. Facebook, Inc.*, No. 3:18-CV-05982 (N.D. Cal.); *Walters v. Kimpton Hotel & Rest.*, No. 3:16-CV-05387 (N.D. Cal.); *In re Arby's Rest. Grp. Inc. Data Sec. Litig.*, Nos. 1:17-CV-514 & 1:17-CV-1035 (N.D. Ga.)).

[48] Doc. 36-2 at 6 (citing *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276 (2d Cir. 2023); *Ramirez v. Paradies Shops, LLC.*, 59 F.4th 1213 (11th Cir. 2023); *see Sheffler v. Americold Realty Trust*, No. 22-11789, 2023 WL 3918491 (11th Cir. June 9, 2023) (unpublished) (reversing denial of leave to amend and noting potential applicability of *Ramirez*)).

[49] Doc. 36 at 8; Doc. 36-3 (Etzel Resume) at 13

[50] Doc. 36 at 8-9 (citing *In re Generali COVID-19 Travel Ins. Litig.*, No. 1:20-md-2968 (S.D.N.Y.); *In re Flagstar December 2021 Data Sec. Incident Litig.*, No. 22-cv-11385 (E.D. Mich.); *In re Robinhood Outage Litig.*, No. 20-cv-1626 (N.D. Cal.)).

[51] Doc. 36 at 8-9 (*Opris v. Sincera Reprod. Med.*, No. 21-CV-3072 (E.D. Pa.); *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 2:16-CV-0506 (W.D. Pa.); *Storm v. Paytime, Inc.*, No. 1:14-cv-1138 (M.D. Pa.)).

establishing that an employer has a common law duty to exercise reasonable care to safeguard its employees' sensitive personal information.[52] In addition to the above-listed cases, Mr. Etzel's firm has litigated a number of data breach cases in Pennsylvania.[53] However, it does not appear that Mr. Etzel has led a data breach case himself.

### c.    Proposed Executive Committee

The Schulte Plaintiffs' proposed executive committee members also have experience in complex data breach litigation. Courtney E. Maccarone has served on class committees in several federal data breach class actions and an MDL and has co-led a state data breach class action.[54] Charles E. Schaffer has two decades of legal experience and leads his firm's consumer class action and data breach and privacy teams.[55] He has served in leadership and class counsel roles in over thirty-five data breach class actions and has also litigated numerous other complex cases.[56] A.J. de Bartolomeo has more than thirty years of experience litigating complex cases, and has served in leadership positions or on executive committees in many class actions.[57] Marc Edelson has practiced for nearly forty years focusing on complex class and multi-district litigation, and been appointed to many leadership roles in

---

[52]    Doc. 36 at 8 (citing *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018)).
[53]    Doc. 36-3 at 2-6 (listing five additional Pennsylvania data breach cases).
[54]    Doc. 36-4 (Maccarone Resume) (collecting cases).
[55]    Doc. 36 at 10.
[56]    Doc. 36-5 (Schaffer Resume) (collecting cases).
[57]    Doc. 36-6 (Bartolomeo Resume) (collecting cases).

such cases.[58] He has participated in several data breach cases in recent years, serving on the executive committee in one.[59] Richard Golomb has more than thirty-five years of experience in plaintiff's-side litigation and has served in leadership roles, including committee positions, in more than a dozen MDLs.[60] He has recently been involved in several data breach cases.[61] Patrick Egan has more than twenty-four years of experience in complex class action litigation and leads his firm's privacy group.[62] He has been involved in several data breach cases in recent years.[63] Finally, proposed local liaison counsel Clifford A. Rieders has practiced before this Court in the past and is amply qualified to serve in his proposed role.[64]

It also appears that the Schulte Plaintiffs' proposed class counsel have some experience litigating together. Several of their attorneys list work on *In re Wawa, Inc. Data Security Litigation*[65] and *In re MOVEit Customer Data Security Breach Litigation*.[66]

---

[58]  Doc. 36-7 (Edelson Resume) (collecting cases).

[59]  Doc. 36 at 12-13.

[60]  Doc. 36-8 (Golomb Resume) (collecting cases).

[61]  Doc. 36 at 13.

[62]  Doc. 36 at 13.

[63]  Doc. 36 at 14.

[64]  Doc. 36 at 14; *see* Manual for Complex Litigation, Fourth, § 10.221 (describing role of liaison counsel). The Wierbowski Plaintiffs have not proposed local liaison counsel. Given the proximity of Mr. Johns's practice (Conshohocken, Pennsylvania), a local liaison may not be necessary.

[65]  Doc. 36 at 13 (Mr. Golomb); Doc. 36-3 at 3 (Mr. Etzel's Firm) (citing No. 19-CV-6019 (E.D. Pa.)).

[66]  Doc. 36 at 9 (Ms. Maccarone), 10 (Mr. Schaffer); Doc. 36-3 at 2 (Mr. Etzel's Firm) (citing No. 1:23-MD-3083 (D. Mass.)).

\*      \*      \*

Although Plaintiffs would undoubtedly be well-served by either group of experienced and accomplished attorneys, the Court concludes that the Wierbowski Plaintiffs' group is best positioned to represent the interests of the class.[67] Messrs. Johns and Barnow have more collective experience (approximately seventy years) than Messrs. Yanchunis and Etzel (approximately fifty years), and have focused their practices more precisely on data breach claims. Mr. Johns also appears to have the most experience of any of the proposed attorneys when it comes to litigating data breach cases in Pennsylvania.[68] Moreover, the Wierbowski's Plaintiffs' proposed executive committee comprises a host of data breach experts, while the Schulte Plaintiffs' proposed executive committee includes several attorneys who would be better described as complex litigation generalists.

Accordingly, the second Rule 23(g)(1)(A) factor weighs in favor of the Wierbowski Plaintiffs.

## C.    Knowledge of Law

As noted in the prior section, the Court concludes that the Wierbowski Plaintiffs' proposed attorneys have greater experience handling data breach cases.

---

[67]    Nothing in this comparison should be considered a denigration of any of the proposed Schulte attorneys. They are all eminently qualified. But, faced with competing applications for interim class counsel, the Court is forced to find and highlight distinctions like these.

[68]    *In re Vanguard*, 625 F. Supp. 3d at 369, 370 (giving dispositive weight to counsel's "local expertise in class action and complex litigation").

They also have somewhat more familiarity litigating the instant type of suit in Pennsylvania courts. Accordingly, for the same reasons developed in the prior section, the Court weighs the third Rule 23(g)(1)(A) factor in favor of the Wierbowski Plaintiffs.[69]

### D.     Resources

Both Plaintiffs' groups explain that their proposed interim class counsel are members of law firms with significant financial means and staffs of attorneys to support the litigation of this case.[70] The Court takes both sides at their word and sees no cause for believing that either group would be unable or unwilling to commit adequate resources to this case. Accordingly, the fourth Rule 23(g)(1)(A) factor is neutral.

### E.     Rule 23(g)(1)(B) Other Considerations

The Court concludes that, on balance, the unenumerated considerations are neutral. The Schulte Plaintiffs note that their proposed interim class counsel are supported by a majority of named plaintiffs, but that majority is not overwhelming (nine to five (counting the Saxers as one)).[71] In the Court's view, that advantage is negated by the somewhat sleeker executive committee proposed by the Wierbowski

---

[69]  *See* Doc. 35 (arguing the experience and knowledge factors as a single element based on the attorneys' resumes); Doc. 36 at 14-15 (arguing that the knowledge factor should be evaluated based on the attorneys' resumes as developed in the experience factor).

[70]  Doc. 35 at 11; Doc. 36 at 15.

[71]  *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, No. 4:12-MD-2380, 2013 WL 183855, at *3 (M.D. Pa. Jan. 17, 2013).

Plaintiffs, which has two fewer members than that proposed by the Schulte Plaintiffs. More is not always better, and in this comparatively modest data breach action with a class of approximately one million plaintiffs[72] (as opposed to other data breaches affecting hundreds of millions of customers) a smaller executive committee is likely to facilitate faster and easier coordination, reduce the risk of duplication, and, ideally, generate a smaller fee.[73]

## IV.    CONCLUSION

For the foregoing reasons, the Wierbowski Plaintiffs' motion to appoint interim class counsel is granted, and the Schulte Plaintiffs' motion for the same is denied.

A separate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[72]  Doc. 1 ¶ 43.

[73]  *See* Manual for Complex Litigation, Fourth, § 10.221 (warning that committees of counsel "can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses"); *id.* (stating that the "most important [factor to consider when appointing counsel] is achieving efficiency and economy without jeopardizing fairness to the parties"); *id.* § 21.272 (warning against overstaffing).