# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| *In re Geisinger Health Data Security Incident Litigation* | Case No. 4:24-cv-01071-MWB |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Ben Barnow (*pro hac vice*)
Anthony L. Parkhill (*pro hac vice*)
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Telephone: (312) 621-2000
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

Benjamin F. Johns (PA I.D. 201373)
Samantha E. Holbrook (PA I.D. 311829)
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Interim Co-Lead Class Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................1

II.    FACTUAL BACKGROUND...............................................................2

    A.    The Litigation ...........................................................................2

    B.    Settlement Negotiations and the Mediation ...........................4

III.    THE PROPOSED SETTLEMENT .....................................................5

    A.    The Proposed Settlement Class ...............................................5

    B.    The Release ..............................................................................5

    C.    Compensation to Class Members.............................................6

        1.    Out-of-Pocket Losses.....................................................6

        2.    Alternative Cash Payment..............................................7

        3.    Credit/Medical Monitoring .............................................7

    D.    The Notice and Claim Process .................................................8

        1.    Notice .............................................................................8

        2.    Claims Process and Administration...............................9

        3.    Opt-Out Requests and Objections................................10

    E.    Residual ................................................................................11

    F.    Proposed Class Representative Service Awards ...................12

    G.    Fee Award and Costs.............................................................12

IV.    ARGUMENT....................................................................................13

    A.    The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) and *Girsh* Factors for Preliminary Approval ..........................................................14

1.    The Proposal Was Negotiated at Arm's Length ......................15

2.    The Relief Provided for the Class Is Adequate ........................16

    a.    The Settlement accounts for the costs, risks, and delay of trial and appeal..................................................17

    b.    The settlement provides for an effective method of distributing relief to the class, including through a simplified claims process................................................18

    c.    The proposed attorneys' fee award is reasonable...........18

    d.    There are no additional agreements required to be identified under Rule 23(e)(3) .........................................19

3.    The Settlement Treats Class Members Equitably Relative to Each Other ........................................................................19

4.    The Settlement Satisfies All the Applicable *Girsh* Factors......20

B.    The Proposed Settlement Class Satisfies the Criteria of Rule 23(a).................................................................................................21

1.    The Class Is Sufficiently Numerous .........................................22

2.    There Are Questions of Law or Fact Common to the Class ..........................................................................................22

3.    The Class Representatives' Claims Are Typical of the Claims of the Class ..................................................................23

4.    The Class Representatives and Class Counsel Will Fairly and Adequately Represent the Class.........................................24

5.    Common Issues Predominate Over Any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy...............................25

    a.    Common issues predominate...........................................25

    b.    A class action is superior to other means of adjudication.....................................................................26

C.    The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances......................................28

V.    THE COURT SHOULD PROVISIONALLY APPOINT SETTLEMENT CLASS COUNSEL ........................................................................30

VI.    CONCLUSION..............................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................. 22, 27

*Barletti v. Connexin Software, Inc.,*
    No. 2:22-CV-04676-JDW, 2024 WL 1096531 (E.D. Pa. Mar. 13, 2024) ....... 20

*Boone v. City of Philadelphia*,
    668 F. Supp. 2d 693 (E.D. Pa. 2009) ................................................................ 19

*Calhoun v. Invention Submission Corp*.,
    No. 2:18-CV-01022, 2022 WL 20561728 (W.D. Pa. Aug. 24, 2022) ...... 15, 16

*Checchia v. Bank of Am., N.A.*,
    No. 21-cv-3585, 2023 WL 2051147 (E.D. Pa. Feb. 16, 2023) ........................ 22

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ............................................................................ 14

*Fein v. Ditech Fin., LLC*,
    No. 5:16-CV-00660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017) ............... 18

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-00274, 2019 WL 316722 *5 (E.D. Pa. Jan. 23, 2019) ....... 14, 22, 28

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-0274, 2019 WL 4677954 (E.D. Pa. Sept. 23, 2019) ...................... 25

*Gates v. Rohm and Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2007) ...................................................................... 22

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................................ 20

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ..................... 21

*Hall v. Accolade, Inc.*,
No. 17-cv-03423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019)............... 13, 23

*In re Canon USA Data Incident Litig.*,
No. 20-cv-6239, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023)......................18

*In re CertainTeed Fiber Cement Siding Litig.*,
303 F.R.D. 199 (E.D. Pa. 2014)........................................................................17

*In re Flonase Antitrust Litig.*,
291 F.R.D. 93 (E.D. Pa. 2013)..........................................................................21

*In re Imprelis Herbicide Mktg, Sales Prac. & Prods. Liability Litig.*,
296 F.R.D. 351 (E.D. Pa. 2013)........................................................................24

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ...................................................................... 23, 30

*In re Onix Grp., LLC Data Breach Litig.*,
2024 WL 3015528, at *10 .......................................................................... 17, 26

*In re Onix Grp., LLC Data Breach Litig.*,
2024 WL 3015528 (citing *In re Wawa*, 2023 WL 6690705)
(E.D. Pa. Oct. 12, 2023)). .................................................................. 17, 24, 26

*In re Onix Grp., LLC Data Breach Litig.*,
No. CV 23-2288-KSM, 2024 WL 5107594 (E.D. Pa. Dec. 13, 2024).............18

*In re Philadelphia Inquirer Data Sec. Litig.*,
No. 24-cv-2106, 2024 WL 4582881 (E.D. Pa. Oct. 25, 2024)........................14

*In re Philadelphia Inquirer Data Sec. Litig.*,
No. CV 24-2106-KSM, 2025 WL 845118 (E.D. Pa. Mar. 18, 2025) .............19

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012).................................................................. 16, 27

*In re Restasis Antitrust Litig.*,
527 F. Supp. 3d 269 (E.D.N.Y. 2021) ..............................................................29

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
No. 13-md-2445, 2023 WL 8437034 ............................................................20

*In re Wawa, Inc. Data Sec. Litig.*,
141 F.4th 456 (3d Cir. 2025) ....................................................................15

*In re Wawa, Inc. Data Sec. Litig.*,
No. 19-cv-6019, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023)............ 21, 23, 26

*In re: Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ......................................................................22

*Kelly, v. Santander Consumer USA, Inc.*,
No. 20-cv-3698, 2023 WL 8701298 (E.D. Pa. Dec. 15, 2023) ........................21

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).............................................................................. 28, 29

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................ 19, 27

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..................................................................................22

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
726 F.2d 956 (3d Cir. 1983) ......................................................................19

*Wierbowski v. Geisinger Health, et al.*,
No. 4:24-cv-01071-MWB (M.D. Pa.) ...........................................................3

## Constitutional Provisions & Statutes

28 U.S.C. § 1715(b) ..................................................................... *passim*

## Rules & Regulations

Fed. R. Civ. P. 23(a)(1).............................................................................22
Fed. R. Civ. P. 23(a)(2).............................................................................22
Fed. R. Civ. P. 23(a)(3).............................................................................23

Fed. R. Civ. P. 23(a)(4)........................................................................24

Fed. R. Civ. P. 23(b)(3)................................................................ 25, 28

Fed. R. Civ. P. 23(b)(4)........................................................................27

Fed. R. Civ. P. 23(c)(2)(B)........................................................... 28, 29

Fed. R. Civ. P. 23(c)(3)........................................................................29

Fed. R. Civ. P. 23(e)(1)(B)............................................................ 13, 14

Fed. R. Civ. P. 23(e)(1)(A)...................................................................13

Fed. R. Civ. P. 23(e)(2)................................................................. *passim*

Fed. R. Civ. P. 23(e)(3)........................................................................19

Fed. R. Civ. P. 23(g)(1)(A)...................................................................30

# I.    INTRODUCTION

Plaintiffs Amber Lopez, Thomas Wilson, Brenda Everett, Ralph Reviello, and James Wierbowski and Defendants Geisinger Health and Nuance Communications, Inc. have reached an agreement to settle this data privacy class action litigation for a $5 million, non-reversionary common fund.  The settlement fund will be used to pay Approved Claims for Settlement Benefits, Administrative Expenses, attorneys' fees, litigation expenses and Class Representative Service Awards.[1] Under the terms of the Settlement, participating Class Members will have the option to select one of two payment options: (1) reimbursement of actual out of pocket losses that are more likely than not attributable to the Data Incident, up to $5,000 per Claimant or (2) an Alternative Cash Payment distributed on a pro rata basis. In addition to these monetary benefits, all Settlement Class Members may also elect to receive a code to enroll in one year of Credit/Medical Monitoring and Identity Theft Protection Services.

The Settlement was reached after a hard-fought mediation with the assistance of a well-respected mediator, Hon. Diane M. Welsh (Ret.). Given the risks faced by Plaintiffs on both the merits and class certification, the Settlement represents an outstanding result and readily satisfies Rule 23's requirement that it be fair,

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definitions as set forth in the Settlement Agreement filed contemporaneously herewith.

reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Plaintiffs respectfully request that the Court enter an order preliminarily approving the Settlement, directing the issuance of Notice to the Settlement Class, and scheduling a Final Approval Hearing pursuant to Fed. R. Civ. P. 23(e)(2). A proposed order is submitted herewith. Geisinger and Nuance do not oppose the relief sought in this motion.

## II.    FACTUAL BACKGROUND

### A.    The Litigation

Geisinger is a healthcare provider based in Pennsylvania, while Nuance is a computer software technology corporation based in Massachusetts. Nuance licenses certain software to Geisinger and provides certain related professional services to Geisinger. In connection with Nuance's provision of related professional services, Geisinger provided Nuance with certain personally identifiable information ("PII") and personal health information ("PHI") of its patients.

This case arises from a Data Incident that occurred on or about November 29, 2023, when a former Nuance employee improperly accessed Geisinger's patient records, resulting in the download of certain personal information belonging to Plaintiffs and members of the Settlement Class. The breach potentially included the data of approximately 1,262,618 individuals, and included names, birthdates,

addresses, admit and discharge or transfer codes, medical record numbers, race, genders, phone numbers and facility name abbreviations.[2]

The first of several putative class actions was filed in this Court on June 28, 2024.[3] *Wierbowski v. Geisinger Health, et al.*, No. 4:24-cv-01071-MWB (M.D. Pa.). The plaintiffs in these cases allege, *inter alia*, that the Defendants failed to take reasonable measures to safeguard the sensitive data entrusted to them. On July 31, 2024, the Court entered an order consolidating these cases under the case caption, *In re: Geisinger Health Data Security Incident Litigation.* Then, on January 30, 2025, the Court entered an order appointing Benjamin F. Johns of Shub Johns & Holbrook LLP and Ben Barnow of Barnow and Associates, P.C. as Interim Co-Lead Class Counsel pursuant to Fed. R. Civ. P. 23(g). ECF No. 43.

Plaintiffs filed the operative Consolidated Complaint on March 17, 2025. ECF No. 44. It asserts claims for negligence, negligence per se, breach of fiduciary duty (against Geisinger only), breach of implied contract, breach of contract to which

---

[2] Notably, as Defendants strongly argued, this appears to have excluded the exfiltration of Social Security numbers.
[3] Another putative class action was filed in the Montour County Court of Common Pleas on July 9, 2024. *Thomas v. Geisinger Health Plan,* Case No. 2024-00203. The plaintiff in that case, who is represented by one of Plaintiffs' Counsel here, will discontinue that action upon the Effective Date of the Settlement.
[4] Another putative class action was filed in the Montour County Court of Common Pleas on July 9, 2024. *Thomas v. Geisinger Health Plan,* Case No. 2024-00203. The plaintiff in that case, who is represented by one of Plaintiffs' Counsel here, will discontinue that action upon the Effective Date of the Settlement.

Plaintiffs were intended third party beneficiaries, and unjust enrichment. It also asserts a claim for declaratory and injunctive relief. Plaintiffs demand monetary damages and other remedies, and seek to represent a class comprised of all persons whose PII and PHI was compromised in the Data Incident.

### B.  Settlement Negotiations and the Mediation

The Parties discussed pursuing early resolution, and ultimately scheduled an in-person mediation with retired Judge Welsh. ECF No. 45. In anticipation of the mediation, Plaintiffs served Geisinger and Nuance with numerous requests for documents and information relevant to the Data Incident. Plaintiffs also provided Defendants with an opening settlement demand. Defendants provided documents in response to Plaintiffs' pre-mediation requests, and also served Plaintiffs with their own set of requests. The Parties exchanged their mediation statements and other relevant information prior to the mediation.

The Parties attended the mediation on June 30, 2025 at JAMS in Philadelphia. The mediation session was hard-fought and productive. With Judge Welsh's assistance, by the end of the day, the Parties reached an agreement in principle to settle the case. The Parties subsequently drafted a comprehensive Settlement Agreement, solicited bids from multiple settlement administration companies and ultimately agreed upon a Settlement Administrator. They then drafted the Claim Form and Notice documents, and prepared this motion. The Parties now request that

the Court grant preliminary approval of the Settlement, which will authorize the dissemination of Notice to the class and schedule a Final Approval Hearing for no earlier than 110 days from entry of the Preliminary Approval Order.

## III.    THE PROPOSED SETTLEMENT

### A.    The Proposed Settlement Class

The proposed Settlement Class is defined as:

> All persons in the United States whose personally identifiable information or personal health information was compromised in the data incident that occurred on or about November 29, 2023, wherein an unauthorized individual gained access to Geisinger's patient records (i.e., the Data Incident, as previously defined), including all persons who were sent a notice of this data incident.

Settlement Agreement ("SA") ¶ nn. Geisinger's and Nuance's officers and directors are excluded from the Settlement Class, as are (i) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (ii) the judges assigned to evaluate the fairness, reasonableness, and adequacy of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of perpetrating, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B.    The Release

In exchange for the Settlement Benefits provided for under the Settlement Agreement, Class Members will release any and all claims (i.e., the Released

Claims) against Geisinger and Nuance and its Released Parties as set forth in the Settlement Agreement. *Id.* ¶¶ 93, 95. The release is tailored to cover the claims that were asserted or that could have been asserted by Class Members related to the Data Incident. *Id.* ¶ 94.

### C.    Compensation to Class Members

As noted above, the Settlement provides for the creation of a $5 million non-reversionary common Settlement Fund to be funded by or on behalf of Defendants. *Id.* ¶¶ 16, 18. The Settlement Fund will be used to pay for Administrative Expenses, any Court-approved Fee Award and Costs and Service Awards, and any applicable taxes. *Id.* ¶ 19. The remaining amount, i.e., the Net Settlement Fund, will be used to pay for Approved Claims submitted by Class Members for Settlement Benefits. Class Members will have the ability to submit a Claim Form for either an Out-of-Pocket Loss or an Alternative Cash Payment (but not both). *Id.* ¶¶ 26–27. A summary of these benefits is set forth below.

### 1.    Out-of-Pocket Losses

Any Class Members who incurred losses demonstrably related to the Data Breach may submit a claim seeking up to $5,000 per person for the reimbursement of Out-of-Pocket Losses. *Id.* ¶ 27. Out-of-Pocket Losses must be supported by reasonable documentation demonstrating that the claimed loss is more likely than not a result of the Data Incident. *Id*. Any claim for an Out-of-Pocket Loss that is

rejected – and not timely cured – will instead be automatically considered as a claim for an Alternative Cash Payment. *Id*.

### 2.    Alternative Cash Payment

In lieu of a claim for an Out-of-Pocket Loss, Class Members may submit a claim for a pro rata Alternative Cash Payment. *Id*. ¶ 28. No documentation will be required to submit a claim for an Alternative Cash Payment; Class Members will only be required to provide the Unique Claim ID that the Claims Administrator will provide on their notice. The amount of money each Class Member who submits an Approved Claim will receive will be calculated in accordance with the plan of allocation set forth in Section VI of the Settlement Agreement.

> The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) Service Award, and (iv) taxes. The remaining amount is the Net Settlement Fund. The Settlement Administrator will first apply the Net Settlement Fund to pay Approved Claims for Out-of-Pocket Losses. *Id*. ¶ 41(a). The amount of the Net Settlement Fund remaining after all Out-of-Pocket Losses are applied shall be referred to as the "Post-Loss Net Settlement Fund." The Settlement Administrator shall then utilize the Post-Loss Net Settlement Fund to make the Alternative Cash Payments. *Id*. ¶ 41(b). The amount of each Alternative Cash Payment shall be calculated by dividing the Post-Loss Net Settlement Fund by the number of valid claims submitted for Alternative Cash Payments.

*Id*.

### 3.    Credit/Medical Monitoring

In addition to submitting a claim for Out-of-Pocket Losses or an Alternative Cash Payment, Settlement Class Members may also elect to receive a code to enroll

in Credit/Medical Monitoring and Identity Theft Protection Services for a period of one year. The costs associated with enrolling Settlement Class Members will be paid from the Settlement Fund.

### D.    The Notice and Claim Process

#### 1.    Notice

The Parties have selected Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator. *See* Joint Declaration of Benjamin F. Johns and Ben Barnow in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Decl.") ¶ 16. Kroll was selected by the Parties following a competitive bidding process. *Id.* ¶ 18.[5] Kroll is a nationally recognized settlement administration company that has handled dozens of similar data breach settlements across the country. *Id.* ¶ 16. All costs of the Notice and settlement administration will be deducted from the Settlement Fund. SA ¶ 30. The Notice Plan provides for individual Notice to Class Members by Postcard Notice via U.S. mail. SA ¶ 32. The Settlement Administrator will send the direct mail Notices after running the class list through the National Change of Address Registry, and take other steps to ensure that Notice reaches the Settlement Class consistent with due process. *Id.* ¶¶ 49. Direct Notice may be enhanced via publication to expand the reach of the Notice to the extent such notice if deemed appropriate. *Id.* ¶ 33, 48. The

---

[5] The Counsel Decl. and its exhibits are attached as **Exhibit 2**.

Settlement Administrator will also be responsible for ensuring that the requisite notice to the appropriate federal and state officials is provided in accordance with the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1715(b).

The Settlement Administrator will establish a dedicated Settlement Website that will inform Class Members of the terms of this Settlement Agreement, their rights, relevant Settlement dates and deadlines, and other related information. SA ¶ 54; Counsel Decl. ¶ 18-19. The Settlement Website will be maintained and updated periodically by the Settlement Administrator, and will include relevant documents, including the following: (i) the Long Form Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement; (v) the Consolidated Class Action Complaint; (vi) the motion for a Fee Award and Costs and Service Awards after it is filed; and (vii) any other materials agreed upon by the Parties and/or required by the Court. SA ¶ 54. The Settlement Website will also contain the contact information for the Settlement Administrator and Class Counsel. *Id.* Class Members will be able to submit Claim Forms through the Settlement Website or via the mail. *Id.* ¶ 55, 57.  The Settlement Administrator will also create a toll-free help line so Class Members can obtain additional Settlement information.

## 2.    Claims Process and Administration

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile

documents supporting their claim, and decide whether they would like to participate, opt-out, object, or do nothing. Class Members will have 90 days after the Notice is initially issued to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. SA ¶¶ 13(a)(b), 37. The Claim Form is written in plain English. SA at **Exhibit A** (Claim Form). The Settlement Administrator will be responsible for reviewing the Claim Forms and determining if they are complete and valid. SA ¶ 37. Should a claim be incomplete or defective, the Settlement Administrator will request additional information from the Claimant and give the Claimant 21 days to cure the defect. *Id*. ¶ 38. Moreover, where a Class Member files a claim for an Out-of-Pocket Loss that is rejected, and the Class Member fails to cure the deficiency, the claim instead automatically will be considered as a claim for an Alternative Cash Payment. *Id.*

### 3.    Opt-Out Requests and Objections

Class Members will have 60 days from the Notice Date to object to or to submit a request for exclusion ("Opt-Out Request") from the Settlement. *Id.* ¶¶ 13(z), 61, 67. To submit a valid Opt-Out Request to the Settlement, Class Members must strictly comply with the requirements of the Settlement Agreement. *Id.* ¶¶ 61, 62. Any Class Member who timely requests exclusion shall not (a) be bound by any orders or judgments entered in the Litigation or relating to the Settlement; (b) be entitled to relief under, or be affected by, the Settlement Agreement; (c) gain any

rights by virtue of the Settlement Agreement; or (d) be entitled to object to any aspect of the Settlement. *Id.* ¶ 65.

Any Class Member who wishes to object must submit a timely written notice of the objection by the Objection Deadline, which is also 60 days following the Notice Date. *Id.* ¶¶ 13(z), 67. Objections must also comply with the Settlement Agreement's requirements. *Id.* ¶ 68. Any Class Member who does not make their objections timely and in the manner prescribed by the Settlement Agreement waives their objection and is forever barred from raising their objections to this Settlement in this or any other action or proceeding, absent further order of the Court. *Id.* ¶ 71.

### E.    Residual

To the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of Settlement Payments, a subsequent Settlement Payment will be made evenly to all Class Members with Approved Claims for Alternative Cash Payments who cashed or deposited the initial payment they received, provided that the average check amount of the subsequent payment is equal to or greater than $5.00. *Id.* ¶ 43. Should any remaining amount of the Net Settlement Fund be economically undistributable, the Parties shall petition the Court for permission to distribute the remaining funds to the Cybercrime Support Network, a 501(c)(3) non-profit that provides resources to help people recognize, report, and recover from cybercrimes. *Id.*

### F.    Proposed Class Representative Service Awards

Plaintiffs have been dedicated and active participants on behalf of the Class they seek to represent. Counsel Decl. ¶ 26. They actively assisted Class Counsel with their investigation, participated in multiple interviews, and provided supporting documentation and personal information throughout the process. *Id.* Plaintiffs reviewed the complaints and the terms of the Settlement and communicated with their counsel regarding the Settlement. *Id.* Each Plaintiff put their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts. *Id.* ¶ 27. Class Counsel kept in close contact with Plaintiffs during the litigation through numerous emails and personal telephone calls. *Id.* ¶ 28. Plaintiffs have been vital in litigating this matter, have been personally involved in the case, and support the Settlement. *Id.*

In view of these efforts, on behalf of Plaintiffs, Class Counsel will separately (as part of their motion for a Fee Award and Costs) petition the Court for approval of Service Awards in the amount of $2,000 to each of the proposed Class Representatives (total of $10,000). *Id.* ¶ 29; SA ¶ 74. This amount is consistent with those approved in other data breach class action settlements. Any approved Service Awards will be paid from the Settlement Fund. SA ¶ 73.

### G.    Fee Award and Costs

As part of the Settlement, Plaintiffs will separately file a motion for an award

of attorneys' fees and reimbursement of litigation costs and expenses (i.e., the Fee

Award, Costs, and Expenses). *Id*. ¶ 75. Plaintiffs' counsel intend to request an

attorneys' fee award of up to 33.33% of the Settlement Fund.

Separately from attorneys' fees, Class Counsel also intend to seek

reimbursement of litigation costs and expenses that were necessarily incurred during

this litigation. Any approved Fee Award and Costs will be paid out of the Settlement

Fund. *Id.* ¶ 73. The Settlement is not conditioned upon the Court's award of any

attorneys' fees or expenses. *Id.* ¶ 75. Plaintiffs will file a motion for a Fee Award

and Costs (and Service Awards) no later than 14 days prior to the Objection

Deadline, and post it on the Settlement Website. *Id*. ¶ 74.

## IV.   ARGUMENT

Federal Rule of Civil Procedure 23(e), "explicitly discusses the requirements

for class settlements." *Hall v. Accolade, Inc.*, No. 17-cv-03423, 2019 WL 3996621,

at *2 (E.D. Pa. Aug. 23, 2019). At the preliminary approval stage, the parties

"provide the court with information sufficient to enable it to determine whether to

give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The Court then

decides whether "giving notice is justified by the parties' showing that the court will

likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the

class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Ultimately, "[u]nder Rule 23(e)(2), a settlement must be 'fair, reasonable, and

adequate.'" *In re Philadelphia Inquirer Data Sec. Litig.*, No. 24-cv-2106, 2024 WL 4582881, at *8 (E.D. Pa. Oct. 25, 2024) (quoting Fed. R. Civ. P. 23(e)(2)). In reviewing a motion for preliminary approval, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

If the district court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *1, *5 (E.D. Pa. Jan. 23, 2019). The Settlement meets these criteria.

## A.    The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) and *Girsh* Factors for Preliminary Approval

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. The factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to

be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). As explained below, the Settlement exceeds the preliminary approval threshold.

### 1.    The Proposal Was Negotiated at Arm's Length

As noted above, the Settlement is the product of hard-fought, arm's length negotiations and a mediation that was overseen by an experienced mediator, Hon. Diane M. Welsh (Ret.). This factor supports approval of the settlement. *See In re Wawa, Inc. Data Sec. Litig.,* 141 F.4th 456, 462, n.2 (3d Cir. 2025) (describing Judge Welsh as "an experienced mediator with JAMS…"); *Calhoun v. Invention Submission Corp.*, No. 2:18-CV-01022, 2022 WL 20561728, at *1 (W.D. Pa. Aug. 24, 2022) (same).

Proposed Class Counsel who negotiated the Settlement are experienced and respected class action litigators with significant experience in data breach cases. Counsel Decl. ¶ 31 and Exhibits A and B thereto (firm resumes). Following the mediation, Class Counsel spent significant amounts of time drafting the Settlement Agreement and its exhibits, revising those drafts, and negotiating details of the final written Settlement Agreement with counsel for Geisinger and Nuance. *Id.* ¶ 10. At all times, the negotiations were at arm's length and, while courteous and professional, were intense and hard-fought on all sides. *Id.* ¶¶ 7-9.

### 2.    The Relief Provided for the Class Is Adequate

This case and the proposed Settlement are the product of significant investigation of Plaintiffs' and Class Members' claims.[6] Class Counsel conducted extensive and lengthy interviews of Plaintiffs, reviewed the Plaintiffs' documentation and all documents that Geisinger and Nuance produced regarding the Data Incident prior to mediation, consulted and retained a cyber security expert, and analyzed the applicable laws of Pennsylvania and other jurisdictions regarding breaches of customers' Personal Information. *Id.* ¶ 11.

As discussed above, the Parties exchanged informal discovery prior to the mediation, as well as detailed mediation statements. *Id.* ¶ 7. Class Counsel analyzed the documents in advance of the mediation. *Id.* Plaintiffs' submission of a mediation statement and Class Counsel's preparation for that proceeding and analysis of Defendants' mediation statement further informed Plaintiffs' assessment of the relative strengths and weaknesses of their claims. *Id.*

---

[6] The fact that the Parties have not engaged in formal discovery is not determinative. That is consistent with a long line of cases in which courts have preliminarily approved class action settlements in the early stages of litigation, especially where meaningful informal (i.e., confirmatory) discovery has occurred. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement").

### a. The Settlement accounts for the costs, risks, and delay of trial and appeal

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Class Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. *Id*. ¶ 35.

Plaintiffs faced "a significant risk in this case because they must prove not only that Defendant owed a duty to Plaintiffs to safeguard their information, but also that their conduct was the proximate cause of that breach." *In re Onix Grp., LLC Data Breach Litig.*, 2024 WL 3015528, at *10. Plaintiffs and the Settlement Class would face several other delays and challenges, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval.").

Because the Settlement benefits here outweigh the risks and uncertainties of continued litigation—including the attendant time and expenses associated with briefing a motion to dismiss, contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal—this factor weighs in favor of preliminary approval of the Settlement.

### b. The settlement provides for an effective method of distributing relief to the class, including through a simplified claims process

The Settlement creates a straightforward procedure for Class Members to submit a Claim Form. It also provides for effective Notice to Class Members using direct mailing. SA ¶ 32. This factor supports the fairness of the settlement. *See In re Canon USA Data Incident Litig.*, No. 20-cv-6239, 2023 WL 7936207, at *4 (E.D.N.Y. Nov. 15, 2023) (granting preliminary approval to data breach settlement under which class members could claim ordinary losses, extraordinary losses, and credit monitoring).

### c. The proposed attorneys' fee award is reasonable

Class Counsel have devoted significant time and financial resources to the litigation despite the uncertainty of prevailing as to class certification and the merits and establishing damages. Class Counsel did not broach the topic of attorneys' fees until after agreeing on all substantive settlement terms with Defendants. Counsel Decl. ¶ 32. Plaintiffs will seek attorneys' fees equal to 33.33% of the Settlement Fund, subject to Court approval. This amount is reasonable and consistent with amounts approved in other data breach class actions in the Third Circuit. *See In re Onix Grp., LLC Data Breach Litig.*, No. CV 23-2288-KSM, 2024 WL 5107594, at *14 (E.D. Pa. Dec. 13, 2024) ("…courts regularly approve fee awards around [33%]…") (citing *Fein v. Ditech Fin., LLC*, No. 5:16-CV-00660, 2017 WL 4284116,

at *12 (E.D. Pa. Sept. 27, 2017)); *In re Philadelphia Inquirer Data Sec. Litig.,* No. CV 24-2106-KSM, 2025 WL 845118, at *14 (E.D. Pa. Mar. 18, 2025) (awarding one-third of the settlement fund as fees, and noting that that amount "tracks the median attorneys' fees in class actions.") (citing *See Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009).

Plaintiffs will file a motion and supporting materials supporting the requested Fee Award, Costs and Expenses – as well as the Plaintiff Service Awards – in accordance with the Settlement Agreement.

> ### d. There are no additional agreements required to be identified under Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement. "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). No such agreement exists in this case.

> ### 3. The Settlement Treats Class Members Equitably Relative to Each Other

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

The Settlement treats all Class Members fairly and equally relative to each

other and in relation to the strengths of their claims. For purposes of setting recovery amounts, the Settlement fairly protects the interests of all parties by providing cash compensation. The Settlement also provides valuable non-monetary relief to the entire Class in the form of credit monitoring. In sum, the Settlement ensures the Class Members will be treated equitably relative to each other. *Barletti v. Connexin Software, Inc.,* No. 2:22-CV-04676-JDW, 2024 WL 1096531, at *6 (E.D. Pa. Mar. 13, 2024) (reaching that conclusion with respect to a similar plan of allocation in a data breach settlement).

### 4.    The Settlement Satisfies All the Applicable *Girsh* Factors

In addition to the foregoing criteria under Rule 23(e), the Third Circuit has identified a set of factors that should be considered in assessing the fairness of a settlement. *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-md-2445, 2023 WL 8437034, at *4–6 (E.D. Pa. Dec. 4, 2023). The so-called *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at *5 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)) .

To the extent applicable (and not already addressed above), Plaintiffs have satisfied the applicable *Girsh* factors. Had the case not resolved, the parties here would be facing "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023). Numerous courts have recognized the risks associated with data breach class actions. *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.") (internal citations omitted). And even if Geisinger and Nuance theoretically may have had the ability to pay for a larger settlement, "courts within the Third Circuit 'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" *Kelly, v. Santander Consumer USA, Inc.*, No. 20-cv-3698, 2023 WL 8701298, at *4 (E.D. Pa. Dec. 15, 2023) (quoting *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013)).

### B.   The Proposed Settlement Class Satisfies the Criteria of Rule 23(a)

"In addition to reviewing the terms of settlement, a court at the preliminary approval stage may conditionally certify the class for purposes of providing notice, with the final certification decision to be made at the subsequent fairness hearing."

*Checchia v. Bank of Am., N.A.*, No. 21-cv-3585, 2023 WL 2051147, at *2 (E.D. Pa. Feb. 16, 2023) (citing *In re Nat'l Football League*, 301 F.R.D. at 199-200). Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2. The Settlement Class meets the applicable criteria for conditional certification.

### 1.    The Class Is Sufficiently Numerous

The Settlement Class contains approximately 1.2 million class members. The Class easily satisfies the Rule 23(a)(1) numerosity requirement. *See Fulton-Green*, 2019 WL 316722, at *3 ("proposed class [of] 973 people, easily meet[s] the numerosity requirement").

### 2.    There Are Questions of Law or Fact Common to the Class

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-28 (3d Cir. 2004). The commonality threshold is low and does not require an "identity of claims or facts among class members." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 440 (E.D. Pa. 2007) (citation and internal quotation marks omitted). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted).

Here, the facts relating to Data Incident are the key issues in the case. There are multiple common questions, including how the Data Incident occurred, whether Geisinger and Nuance each had a duty to protect Class Members' Personal Information, and whether Class Members were harmed by the alleged breach. As the late Judge Pratter observed in finding this requirement satisfied in another data breach settlement, "each of the class members would have to prove by a preponderance of the evidence that Wawa owed a duty to each [class member] to protect its credit card data. They would all have to show that Wawa's specific negligent acts or omissions caused the data breach to occur and whether proximate cause existed." *In re Wawa*, 2023 WL 6690705, at *4. These common issues are present in this case too.

### 3. The Class Representatives' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Hall*, 2019 WL 3996621, at *7 (citation and internal quotation marks omitted). Typicality is satisfied where there is a "strong similarity of legal theories' [sic] or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players*

*Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (hereinafter "*NFL Players II*") (citation omitted and internal quotation marks omitted). Here, typicality is satisfied because the claims of the named plaintiffs are "virtually identical to those of the class [as they] arise from the same conduct… [Defendant's] security measures and whether they were adequate to protect the Plaintiff's sensitive data." *In re Onix Grp., LLC Data Breach Litig.*, 2024 WL 3015528, at *3 (citing *In re Wawa*, 2023 WL 6690705, at *4) (internal quotation marks omitted). Typicality is satisfied.

### 4. The Class Representatives and Class Counsel Will Fairly and Adequately Represent the Class

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class."

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. & Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (citations and internal quotation marks omitted).

Here, the named Plaintiffs have been actively involved in the litigation of this case, and have assisted throughout the process, answering Class Counsel's many questions, providing documents pertaining to the lawsuit when requested, and reviewing the complaint and terms of the Settlement. Counsel Decl. ¶¶ 26-28. Their interests and those of the other Class Members are aligned: all are equally interested

in proving the factual averments in the Complaint, establishing Gesinger's and Nuance's liability, and obtaining compensation from Gesinger and Nuance. As described below, the Class Representatives have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including data breach class actions. Class Counsel have vigorously prosecuted the action even before their appointment and have devoted substantial effort and resources on behalf of the Class. *Id*. ¶ 30.

### 5.    Common Issues Predominate Over Any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets both requirements.

### a.    Common issues predominate

"Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if common questions of law or fact predominate questions arguably affecting only individuals." *Fulton-Green v. Accolade, Inc.*, No. 18-cv-0274, 2019 WL 4677954, at *6 (E.D. Pa.

Sept. 23, 2019). "When examining whether certain issues predominate, a court looks to see if 'common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *4 (E.D. Pa. July 30, 2021) (citation omitted); *see also In re Onix Grp., LLC Data Breach Litig.*, 2024 WL 3015528, at *4 ("In this data breach litigation, Defendant's conduct is common to all class members, and all class members were harmed by that conduct.").

As a district court observed in *In re Wawa,* "there is a myriad of questions of law and fact that predominate." 2021 WL 3276148, at *4. Those included whether the defendant owed a duty to class members to safeguard their sensitive information; whether the defendant breached that duty; whether the defendant violated state consumer protection laws; whether the defendant complied with industry standards; whether the defendant's conduct or failure to act was the proximate cause of the breach; and whether plaintiffs and the class members are entitled to recovery. *See id.* These same issues, all of which are focused on Gesinger's and Nuance's common course of conduct, predominate here.

> **b.    A class action is superior to other means of adjudication**

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available

methods of adjudication." *Processed Egg Prods.*, 284 F.R.D. at 264. Rule 23(b)(4) suggests that courts consider the following non-exhaustive list of factors when making a superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Here, all four considerations weigh in favor of certifying the Settlement Class. There is no indication that Class Members would be interested in litigating individually or that the litigation should proceed in a non-class forum. In addition, the cost and complexity of litigation would preclude the vast majority of Class Members from filing suit individually.[7] The Settlement, in contrast, provides Class Members with an immediate monetary benefit.

As a district court summarized in another data breach case:

[A]ll of the claims are almost identical because they arise from the same underlying activity and the damages should be easily provable and quantifiable. Furthermore, the value of the individual claims may be modest and thus impractical to litigate on a case by case basis. This is

---

[7] Because the Parties request certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . [because] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord Sullivan,* 667 F.3d at 322 n.56; *Processed Egg Prods.*, 284 F.R.D. at 264.

particularly true for people . . . who have not suffered identity theft but have had to spend time notifying institutions and signing up for identity theft protection programs.

*Fulton-Green*, 2019 WL 316722, at *4 (preliminarily certifying Rule 23(b)(3) class).

### C.    The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances

Pursuant to Rule 23(c)(2)(B), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." There are three aspects to notice requirements under Rule 23 and fundamental due process: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content must be of "such nature as reasonably to convey the required information"; and (3) the notice must "afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted). The proposed Notice Plan achieves all these objectives.

The Summary Notice will be provided to Class Members directly via U.S. mail to the postal address provided by Defendants on the settlement class list. SA ¶¶ 32. In addition to direct mailing, the Settlement Administrator will establish and maintain a Settlement Website through which Class Members can receive additional

information about the Settlement. *Id.* ¶ 54. The Settlement Administrator will also make available a toll-free help line to provide Class Members with additional information about the Settlement and to respond to Class Members' questions. *Id.* The Parties anticipate that the direct notice program here will meet or exceed the applicable requirements. *See also Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), Federal Judicial Center, www.fjc.gov/sites/default/files/2012/NotCheck.pdf ("A high percentage [of the class] (e.g., between 70-95%) can often reasonably be reached by a notice campaign."); *see also In re Restasis Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (citation omitted) (observing that "a notice plan that reaches between 70 and 95 percent of the class is reasonable," and endorsing a notice plan with 80% expected reach).

As required by Rule 23(c)(2)(B), the proposed Long-Form Notice (SA at Exhibit B) "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." It also describes the terms of the Settlement, including requests for service awards for

the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval Hearing and the procedures for appearing at the hearing; and provides contact information for Class Counsel and the Settlement Administrator. Counsel Decl. ¶ 17. The Notices inform Class Members of the deadlines for objecting to the Settlement and excluding themselves from the Class. The deadlines themselves are reasonable. *See Nat'l Football League*, 301 F.R.D. at 203 ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves.").

## V.    THE COURT SHOULD PROVISIONALLY APPOINT SETTLEMENT CLASS COUNSEL

Plaintiffs request that the Court appoint Ben Barnow of Barnow and Associates, P.C. and Benjamin F. Johns of Shub Johns & Holbrook LLP as Class Counsel for the Settlement Class. The Court previously designated these lawyers as interim co-lead class counsel. ECF No. 43. Proposed Class Counsel have vigorously represented Plaintiffs' and Class Members' interests at all times since the inception of this litigation. Counsel Decl. ¶ 30. For the same reasons appointment was appropriate when the Court granted the Rule 23(g) motion, it should appoint Class Counsel for Settlement purposes, as Class Counsel meet all the Fed. R. Civ. P. 23(g)(1)(A) criteria.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) conditionally certify the Settlement Class for settlement purposes only; (3) approve the proposed Notice Plan; (4) approve, set deadlines for, and order the opt out and objection procedures set forth in the Settlement Agreement; (5) appoint Plaintiffs as Class Representatives; (6) appoint Class Counsel; and (7) schedule a Final Approval Hearing in accordance with the proposed schedule set forth above.

Date: September 10, 2025                    Respectfully submitted,

_____
Benjamin F. Johns (PA ID 201373)
Samantha E. Holbrook (PA ID 311829)
**SHUB JOHNS & HOLBROOK LLP**
200 Barr Harbor Dr., Suite 400
Conshohocken, PA 19428
Tel: 610-477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com

- 31 -

aparkhill@barnowlaw.com

*Interim Co-Lead Counsel for Plaintiffs*

Andrew W. Ferich
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

Scott Edward Cole*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
sec@colevannote.com

Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

Jeffrey M. Ostrow
Kenneth Grunfeld
**KOPELOWITZ OSTROW P.A.**
65 Overhill Road
Bala Cynwyd, PA 19004
Telephone: (954) 525-4100
ostrow@kolawyers.com
grunfeld@kolawyers.com

*Counsel for Plaintiffs*

*Admitted pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 10th day of September, 2025, a true and correct copy of the above and foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

_____

Benjamin F. Johns